## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | | |
|---|---|---|
| WARNOCK ENGINEERING, LLC, | § | |
| and RUDOLPH M. WARNOCK, JR. | § | **PLAINTIFFS** |
| | § | |
| | § | |
| v. | § | Civil No. 3:17cv160-HSO-JCG |
| | § | |
| | § | |
| CANTON MUNICIPAL UTILITIES | § | **DEFENDANT** |

## <u>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CANTON MUNICIPAL UTILITIES' [206] MOTION FOR SUMMARY JUDGMENT, AND DENYING AS MOOT DEFENDANT CANTON MUNICIPAL UTILITIES' [126] MOTION TO DISMISS</u>

BEFORE THE COURT are Defendant Canton Municipal Utilities' Motion [126] to Dismiss and its Motion [206] for Summary Judgment, which both seek dismissal of all claims advanced against it by Plaintiffs Warnock Engineering, LLC, and Rudolph M. Warnock, Jr. After due consideration of the Motions [126], [206], related pleadings, the record, and relevant legal authority, the Court finds that Defendant's Motion [206] for Summary Judgment should be granted in part and denied in part, and that Defendant's Motion [126] to Dismiss should be denied as moot. Plaintiffs' claims for copyright infringement, RICO violations, injunctive relief, negligence, open account, misappropriation, and breach of contract should be dismissed. Plaintiffs' claims for wrongful discharge and for retaliation in violation

of the First Amendment under 42 U.S.C. § 1983 will proceed.[1]

## I.   BACKGROUND

### A.   Factual background

According to the Third Amended Complaint [118], which is the operative pleading in this case, Plaintiff Warnock Engineering, LLC ("Warnock Engineering"), is an engineering firm owned by Plaintiff Rudolph M. Warnock, Jr. ("Mr. Warnock").[2]   3d Am. Compl. [118] at 4.   Warnock Engineering and Mr. Warnock (collectively, "Plaintiffs" or "Warnock") began providing engineering services to Defendant Canton Municipal Utilities ("CMU") in January 2016 and worked on a number of projects for CMU.   *Id.*   CMU is a public utility commission within the City of Canton, Mississippi, and is managed by a five-member Board of Commissioners.   *See* Pls.' Mem. [212] at 1.

Plaintiffs allege that Warnock Engineering entered into three written contracts with CMU:   (1) an agreement for "General Engineering Services," effective January 4, 2016 (the "General Engineering Services Agreement"); (2) an agreement for "Sewer and Water System Improvements" entered into on November 8, 2016 (the "Sewer/Water Agreement"); and (3) an agreement for "Water & Sewer

---

[1]  Several Motions [144], [200], [202], [204], pertaining to expert witnesses are also pending in this case.   The Court has reviewed these Motions and related pleadings and finds that they do not affect the Court's resolution of the Motion for Summary Judgment.   Therefore, the Court need not resolve them before considering Defendant's Motions to Dismiss and for Summary Judgment.

[2]  Some of the exhibits in this case refer to Warnock & Associates, which is not a party to this case.   According to Mr. Warnock, Warnock & Associates, LLC, was dissolved November 8, 2017, after the events at issue in this case had occurred, and all of Warnock & Associates' assets were assigned to Warnock Engineering, LLC.   Mr. Warnock's Aff. [211-7] at 2.

System Facility Improvements" that was part of a "Five Point Plan" submitted by Warnock Engineering, and which became effective October 7, 2016 (the "Five Point Plan Agreement"). 3d Am. Compl. [118] at 4. Plaintiffs assert that the Board of Commissioners of CMU (the "CMU Board") terminated CMU's arrangements with all engineers other than Plaintiffs in August 2016, making Mr. Warnock the exclusive engineer for CMU. *Id.* at 5. The Third Amended Complaint claims that Cleveland Anderson ("Mr. Anderson") was appointed to the CMU Board on June 7, 2016, and was later removed in June 2017. *Id.* at 4-5. At some point before he was removed, Mr. Anderson became Chairman. *Id.* at 10.

Plaintiffs maintain that during a meeting with Mr. Warnock on September 18, 2016, Mr. Anderson offered to arrange the murder of a journalist in exchange for $10,000.00. Later, on September 25, 2016, Mr. Anderson allegedly offered to arrange the murder of the mayor of Madison, Mississippi, also for $10,000.00. *Id.* at 4-5. Plaintiffs allege that prior to Mr. Warnock proposing the Five Point Plan Agreement to the CMU Board, Mr. Anderson asked Mr. Warnock "if Anderson could get paid for his vote to approve the agreement," a request which Mr. Warnock refused. Mr. Anderson allegedly subsequently requested a $200,000.00 kickback for supporting the Five Point Plan Agreement in a meeting held on October 6, 2016. *Id.* at 6. Mr. Warnock again refused. *Id.* Plaintiffs assert that they did not adjust the price of the proposed $1,474,000.00 Five Point Plan Agreement, and that it was approved by unanimous vote of the CMU Board at its meeting held on October 7, 2016. *Id.* at 7.

In September 2016, the CMU Board unanimously voted to place Mr. Warnock on the CMU Personnel Committee. *Id.* Mr. Anderson also served on this committee. *Id.* According to Plaintiffs, Mr. Anderson was heavily involved in restructuring the CMU, including adding new departments and new positions, and "insisted that CMU hire his wife in a newly created General Counsel Department." *Id.* When outside counsel advised Mr. Anderson that hiring his wife at CMU would be illegal, he withdrew her name from consideration for possible employment. *Id.*

Mr. Warnock asserts that he expressed frustration to City of Canton officials over Mr. Anderson's attempts to solicit kickbacks and other improper benefits. *Id.* at 8. Mr. Anderson allegedly retaliated by influencing other CMU Commissioners and making motions to fire outside counsel and terminate Plaintiffs from all CMU engineering and personnel work. *Id.* at 9. As a result, Mr. Warnock was informed by letters dated December 29, 2016, and January 17, 2017, that the CMU Board had voted to terminate its contracts with Warnock Engineering. *Id.* at 10. Plaintiffs accuse Mr. Anderson, as Chairman of the CMU Board, of orchestrating the termination, *id.* at 10, because Mr. Warnock had "refused to provide bribes and kickbacks, and consent to the illegal and improper hiring of relatives and friends, demanded by [Mr.] Anderson," *id.* at 11.

According to the Third Amended Complaint, after terminating its contracts with Plaintiffs, Mr. Anderson and CMU continued to use and distribute Plaintiffs' work product, even though CMU had not paid invoices for work performed prior to,

and contract fees resulting from, the termination. *Id.* Plaintiffs allege that CMU has no license or other right to use Warnock Engineering's copyrights, work product, or other intellectual property, unless and until all outstanding amounts are paid by CMU. *Id.* At the time CMU terminated the contracts, it purportedly owed Warnock Engineering $2,369,477.28 for services performed prior to the termination, exclusive of interest, costs, and attorneys' fees, and also owed Warnock Engineering fees in accordance with the termination provisions contained in the Agreements. *Id.* at 11.

B.   Procedural history

Plaintiffs filed the original Complaint [1] in this case on March 9, 2017, and have amended their Complaint three times. The Third Amended Complaint [118] asserts claims against CMU for copyright infringement, vicarious and contributory infringement, wrongful discharge, breach of contract, open account, negligence, defamation, misappropriation of advertising/commercial materials, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(b), and the First Amendment under 42 U.S.C. § 1983. *See* 3d Am. Compl. [118] at 19-23, 24-26.[3] The Third Amended Complaint [118] seeks a declaratory judgment that

> (i) until full and final payment is made, Warnock and Warnock Engineering are entitled to the full protection and ownership of its work

---

[3] The Third Amended Complaint [118] also advanced claims against Mr. Anderson alone under RICO, 18 U.S.C. §§ 1962(c) and 1962(d), *see* 3d Am. Compl. [118] at 23-24, 26-27, and the Mississippi Racketeer Influenced and Corrupt Organization Act ("Mississippi RICO"), Mississippi Code §§ 97-43-1 through 11, *see id.* at 27-29, and for tortious interference with contract, *see id.* at 32. However, the parties filed a Stipulation [146] of Dismissal of Mr. Anderson on April 23, 2018, and Mr. Anderson is no longer a party.

5

product under United States copyright law, 17 U.S.C. § 101 *et seq.*, and (ii) to the extent Warnock and/or Warnock Engineering have licensed any such work product to CMU, such licenses have terminated and expired because of CMU's failure to comply with their payment terms.

*Id.* at 23.

CMU has filed a Motion [126] to Dismiss, asking the Court to dismiss all of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). CMU's Mot. [126] at 1.[4] Although Plaintiffs have opposed this Motion, *see* Pls.' Resp. [150] & Mem. [151], they have dismissed their defamation claim, *see* Notice [134] at 1.

CMU subsequently filed a Motion [206] for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, again seeking dismissal of Plaintiffs' claims. CMU's Mot. [206] at 1-2. CMU states that it filed this Motion "with the understanding that the relief sought in its Motion to Dismiss the Third Amended Complaint is not waived," and it reserves the right to answer the Third Amended Complaint and raise any affirmative or other defenses once the Motion to Dismiss is resolved. *Id.* at 2.

Plaintiffs have filed a Response [211] and Memorandum [212] in opposition to the Motion [206] for Summary Judgment conceding some, but not all, claims. Plaintiffs maintain that the Motion [126] to Dismiss "is essentially mooted and superseded by CMU's Motion for Summary Judgment in that the parties have now

---

[4] CMU also references Rule 12(b)(2) in its Motion, *see* Mot. [126] at 1, but this appears to be a typographical error, as CMU raises no argument pertaining to Rule 12(b)(2). In a previous Motion to Dismiss, CMU had argued that dismissal was required by Rule 12(b)(2) for insufficient service of process, *see* Mem. [8] at 18-19, but it subsequently conceded that service was effected on March 9, 2017, *see* Reply [11] at 14.

presented materials outside of the pleadings for consideration." Pls.' Mem. [212] at 4 n.2.

## II.  DISCUSSION

### A.  CMU's request for hearing

CMU has requested that the Court conduct a hearing on its Motion [206] for Summary Judgment. *See* CMU's Mot. [206] at 1.  The Court finds that a hearing would not be helpful in resolving CMU's Motion [206] and is not necessary. Pursuant to Local Uniform Civil Rule 7(b)(3), the Court will deny CMU's request for a hearing on its Motion [206] for Summary Judgment.

### B.  CMU's Motion [126] to Dismiss

CMU's Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(1), was premised upon Plaintiffs' purported lack of standing as to the copyright claims and was otherwise based upon Rule 12(b)(6) for failure to state a claim.  Plaintiffs have since conceded the copyright and several other claims.  As for the remaining claims, the Motions to Dismiss and for Summary Judgment argue substantially the same bases for dismissal.  For this reason, CMU's Motion to Dismiss is moot in light of the Court's resolution of the Motion for Summary Judgment.

### C.  CMU's Motion [206] for Summary Judgment

#### 1.  Relevant legal standard

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is one that might affect the outcome of the suit under governing law, and a dispute is "genuine" if a jury could return a verdict for the non-movant based upon the evidence in the record. *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018).

If the party seeking summary judgment shows the non-movant's case lacks support, the non-movant is tasked with coming forward with "specific facts" showing a genuine factual issue for trial. *Id.* A court considering a summary judgment motion must "view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in the non-movant's favor." *Id.* (quotation omitted). However, if a non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment remains appropriate. *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### 2. Claims conceded by Plaintiffs

On March 27, 2018, Plaintiffs filed a Notice [134] of Dismissal of their defamation claim pursuant to Federal Rules of Civil Procedure 41(a)(1)(A)(i) and 15(a)(2). Because no Defendant had filed an answer or motion for summary judgment at that time, the defamation claim was voluntarily dismissed.

In response to CMU's Motion [206] for Summary Judgment, Plaintiffs have conceded several other claims, including their claims for copyright infringement, RICO violations, injunctive relief, negligence, open account, and misappropriation.

*See* Pls.' Mem. [212] at 4.[5]   CMU's Motion [206] for Summary Judgment will be granted as unopposed as to these claims, which will be dismissed.   This leaves for the Court's resolution Plaintiffs' claims under state law for breach of contract and wrongful discharge, and under 42 U.S.C. § 1983 for violation of the First Amendment.

    3.   Plaintiffs' breach of contract claims under state law

    a.   The parties' arguments

Plaintiffs assert that CMU breached three contracts with Warnock Engineering for engineering services: (1) the General Engineering Services Agreement; (2) the Sewer/Water Agreement; and (3) the Five Point Plan Agreement.   3d Am. Compl. [118] at 33.

CMU argues that no valid and binding contracts existed between it and Plaintiffs.   According to CMU, "[t]he alleged contracts were not attached to the board minutes and . . . were kept in a file that is separate and apart from the minutes.   Additionally, there were no terms mentioned in the board minutes.   Consequently, a contract or agreement between CMU and Warnock Engineering does not exist."   CMU's Mem. [207] at 27.   CMU further posits that Plaintiffs cannot establish a breach of these purported contracts because the invoices that were submitted to CMU were for work performed by a different legal entity,

_____

[5] In identifying claims that they do not contest, Plaintiffs do not specifically mention their claim for declaratory judgment.   *See* Pls.' Mem. [212] at 4.   However, the declaratory judgment claim relates to Plaintiffs' copyright infringement claim, and Plaintiffs appear to concede all of their copyright claims.   *See id.*   Plaintiffs also do not address the declaratory judgment claim in their Memorandum in support of their remaining claims.   As such, the Court concludes that Plaintiffs intended to dismiss the declaratory judgment claim.

Warnock & Associates LLC, as opposed to Warnock Engineering, the Plaintiff in this case. *Id.* at 28.

Plaintiffs dispute CMU's assertion that the three contracts do not sufficiently appear in CMU's minutes, *see* Pl.'s Mem. [212] at 18, 21-23, and insist that they are entitled to recovery for their services under Mississippi Code § 31-7-57(2), *id.* at 18-21. Plaintiffs additionally argue that CMU is equitably estopped from denying the contracts. *Id.* at 23-25.

b.   The validity of contracts with public boards

Under Mississippi law, a claim for breach of contract has two elements: "(1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *Maness v. K & A Enterprises of Mississippi, LLC*, 250 So. 3d 402, 414 (Miss. 2018), *reh'g denied* (Aug. 9, 2018) (quotation omitted).

In Mississippi, "[a] public board 'speaks and acts only through its minutes.'" *Kennedy v. Claiborne Cty. by & through its Bd. of Supervisors*, 233 So. 3d 825, 829 (Miss. Ct. App. 2017), *reh'g denied* (Aug. 15, 2017), *cert. denied*, 230 So. 3d 1023 (Miss. 2017) (quoting *Wellness, Inc. v. Pearl River Cty. Hosp.*, 178 So. 3d 1287, 1290 (Miss. 2015)). "The minutes are the sole and exclusive evidence of what the board did and must be the repository and the evidence of their official acts." *Id.* (quotation omitted).

Contracts awarded by a board or commission consisting of three or more members such as CMU "must be determined or decided upon only in or at a lawfully convened session, and the proceedings must be entered upon the minutes, of the

board or commission." *Lange v. City of Batesville*, 972 So. 2d 11, 18-19 (Miss. Ct. App. 2008) (quoting *Thompson v. Jones Cty. Cmty. Hosp.*, 352 So. 2d 795, 796 (Miss. 1977)).

> The reasons for the requirements aforesaid are: (1) That when authority is conferred upon a board, the public is entitled to the judgment of the board after an examination of a proposal and a discussion of it among the members to the end that the result reached will represent the wisdom of the majority rather than the opinion or preference of some individual member; and (2) that the decision or order when made *shall not be subject to the uncertainties of the recollection of individual witnesses of what transpired, but that the action taken will be evidenced by a written memorial entered upon the minutes at the time*, and to which all the public may have access to see what was actually done.

*Id.* at 19 (emphasis in original).

Under Mississippi law, it is the responsibility of the entity contracting with a public board, and not of the board itself, to ensure the contract is legal and properly recorded in the minutes. *Wellness, Inc.*, 178 So. 3d at 1291. "[P]lacing a contract in a book other than the minute book or in a person's office is insufficient to meet the minutes requirement." *Dhealthcare Consultants, Inc. v. Jefferson Cty. Hosp.*, 232 So. 3d 192, 194 (Miss. Ct. App. 2017), *reh'g denied* (Aug. 29, 2017), *cert. denied*, 229 So. 3d 714 (Miss. 2017). Moreover, "simply placing a contract . . . in the side pocket of the minute book *at some later date* is insufficient to meet the minutes requirement," as actions taken by a public board must be evidenced by a written memorial entered upon its minutes at the time. *Kennedy*, 233 So. 3d at 829 (emphasis added).

The entirety of a contract, however, need not be reproduced within a board's

11

minutes.  *Lange*, 972 So. 2d at 19.  "Plans, specifications and other papers specifically referred to by the board in its minutes have been held to constitute a part of the contract," and if enough terms and conditions of a contract are contained in the minutes to determine the liability of the contracting parties without resorting to other evidence, a contract may be enforced.  *Id.*  "However, the individual or group contracting with a board carries the responsibility to ensure the contract is properly recorded."  *Id.*

     c.    <u>The three contracts in dispute</u>

     *(i)*    *General Engineering Services Agreement*

CMU has attached as Exhibit "C" [206-3] to its Motion for Summary Judgment what it claims was the General Engineering Services Agreement. According to the text of that Exhibit, the Agreement became effective January 4, 2016.  It was executed by Charles Weems, CMU's Chairman, purportedly on behalf of CMU, and by Mr. Warnock for Warnock Engineering, and then notarized.  Ex. "C" [206-3] at 1, 15.  Warnock has submitted what appears to be a different version of this General Engineering Services Agreement as Exhibit "J" [211-10] to its Response [211], which purportedly became effective September 21, 2016.  While this version also appears to be signed by both Mr. Weems and Mr. Warnock, it is attested to by a different individual.  *See* Ex. "J" [211-10] at 15.  There is no indication what date either of these General Engineering Services Agreements were actually signed.  *See id.*; Ex. "C" [206-3] at 15.

During Mr. Warnock's deposition, he testified he could not say with any

certainty on what date Mr. Weems actually signed the General Engineering

Services Agreement, and Mr. Warnock has acknowledged that he did not know

whether Mr. Weems was authorized by the CMU Board of Commissioners to sign

this Agreement. *See* Mr. Warnock's Dep. [206-1] at 37. The parties have attached

minutes [206-7], [206-9], [211-1] from various CMU Board meetings to support their

positions.

According to the minutes for the August 16, 2016, CMU Board meeting,

supplied as Exhibit "A" to Plaintiffs' Response [211], Mr. Anderson moved to hire

Mr. Warnock as City Engineer

> to take over engineering services from Waggoner Engineering and to
> authorize Mr. Warnock to negotiate a transition agreement for all
> engineering services from Waggoner to Mr. Warnock and to bring back
> the transition agreement within the next 30 days for our signature.

Ex. "A" [211-1] at 25. The motion carried. *Id.* These minutes do not mention the

approval of any General Engineering Services Agreement with either Mr. Warnock

or Warnock Engineering. The Court also notes that the copy of these minutes is

unsigned. *Id.*

Mr. Warnock has submitted an Affidavit [211-7] in which he avers that "[a]t a

CMU Board Meeting on September 13, 2016, Warnock's General Services

Agreement signed by Rudy Warnock was handed to members of the CMU Board of

Commissioners and other CMU officials present." Mr. Warnock's Aff. [211-7] at 1.

According to the minutes from that meeting, a representative from Warnock &

Associates "handed out to all the Board members a list of other items needed to

complete the transition" from Waggoner Engineering to Warnock & Associates.

13

Ex. "A" [211-1] at 27. There is no mention of a General Engineering Services Agreement in these minutes. *See id.* at 27-29.

The minutes reflect that during the September 20, 2016, meeting, the Board executed contracts with its attorney and "Rudy Warnock & Associates to spread across the minutes." *Id.* at 42. No specific information is provided about these contracts however, and they do not appear in the minutes. *See id.* In short, it is not clear what contract was executed with Warnock.

During the November 29, 2016, meeting, "Mr. Warnock gave [the Board Attorney] a General Services Contract to review," *id.* at 105, but that contract does not appear in the minutes, and again, no specific terms are mentioned, *see id.* The CMU Board also "voted to approve and pay the outstanding Warnock invoices" at that meeting. *Id.*

At the December 6, 2016, meeting, the CMU Board's general counsel recommended approval of "Warnock's Agreement" with modifications, *id.* at 110, and "the Board approved Warnock's Agreement with necessary modifications," *id.* A copy of the agreement was not attached, and no additional information appears in the minutes. *See id.* The minutes do not indicate to which agreement they refer, nor do they reveal what the terms of this agreement were.[6]

The minutes of the December 22, 2016, CMU Board meeting refer to the

---

[6] The minutes submitted to the Court for subsequent meetings are devoid of any indication that the December 6, 2016, minutes were ever approved by the CMU Board. *See* Ex. "A" [211-1] at 119-20 (December 20, 2016, meeting minutes); 129-30 (December 22, 2016, meeting minutes); 131-32 (December 29, 2016, meeting minutes).

existence of a "General Services Contract" with Mr. Warnock and state that it "contains a clause which would amount to an illegal gift which violated Mississippi Constitution Article 4, Section 66. (See Warnock contract attached.)." *Id.* at 130. Despite the parenthetical directing the reader to see the attached contract, no contract was attached to the minutes submitted to the Court. At that same meeting, the CMU Board voted "to terminate any and all contracts Warnock & Associates have with CMU . . . ." *Id.*[7]

The parties have submitted excerpts of the deposition of Tammy Moore ("Ms. Moore"), who was an assistant to the CMU general manager. *See* Ms. Moore's Dep. [206-5] at 9; Ms. Moore's Dep. [211-13] at 11. Ms. Moore was in charge of keeping the minutes for the Board from June 21, 2016, until January 17, 2017. *See* Ms. Moore's Dep. [206-5] at 9, 12; Ms. Moore's Dep. [211-13] at 11. Ms. Moore testified that she first saw the General Engineering Services Agreement on December 23 or 24, 2016, when the former Board Attorney brought the Agreement to her office and instructed her to attach the Agreement to the Board minutes. Ms. Moore's Dep. [206-5] at 22-23. Ms. Moore did not do so. *Id.* at 24. Instead, she placed the Agreement in a file folder inside a fireproof vault. *Id.*

*(ii)    Sewer/Water Agreement*

Mr. Warnock claims in his Affidavit [211-7] that "[a]t a CMU Board Meeting on November 8, 2016, Warnock's Sewer & Water System Improvements Agreement

---

[7] It is unclear from the current record whether the December 22, 2016, meeting minutes were ever approved by the CMU Board. *See* Ex. "A" [211-1] at 131-32 (December 29, 2016, meeting minutes).

signed by Rudy Warnock was handed to members of the CMU Board of Commissioners and other CMU officials present." Mr. Warnock's Aff. [211-7] at 2. According to the November 8, 2016, meeting minutes,

> Warnock presented an agreement for "sewer and water system improvements," including design engineering and construction engineering, for approval. Upon a motion by Commissioner Weems and a second by Commissioner Anderson, with all present voting "aye," the Board approved the contract from Warnock & Associates.

Ex. "A" [211-1] at 87. This Agreement was not attached to the minutes, nor do any terms or other details pertaining to the Agreement appear in the minutes. *See id.*

Plaintiffs have attached as Exhibit "B" to the Third Amended Complaint [118] what they maintain is the Sewer/Water Agreement [118-2] approved by the CMU Board. This Agreement became effective November 8, 2016, and is between CMU and Warnock Engineering, LLC. *See* Ex. "B" [118-2] at 3. It was executed by Charles Weems as Board Chairman for CMU on an unspecified date, and by Mr. Warnock on behalf of Warnock Engineering on November 8, 2016. *Id.* at 11. Ms. Moore testified that she had seen a copy of the Sewer/Water Agreement in December 2016 when she found it in some boxes in the office of the former general manager. Ms. Moore's Dep. [206-5] at 47-48; Ms. Moore's Dep. [211-13] at 31.

*(iii) Five Point Plan Agreement*

The minutes of the September 20, 2016, meeting reflect that the Board approved Warnock & Associates' five-point plan, which consisted of:

1. Sewer Maintenance
2. Sewer Service
3. Fire Protection
4. Facility Maintenance

> 5. Economic Development.

Ex. "A" [211-1] at 42.

Mr. Warnock avers in his Affidavit [211-7] that "[a]t a CMU Board Meeting on October 7, 2016, Warnock's Water & Sewer Facility Improvements as Part of the 'Five Point Plan' Agreement signed by Rudy Warnock was handed to members of the CMU Board of Commissioners and other CMU officials present."   Mr. Warnock's Aff. [211-7] at 2.   The minutes of the October 7, 2016, meeting reflect that

> Mr. Warnock presented a professional services agreement between Warnock and CMU to implement Warnock's five-point plan.   Upon a motion by Commissioner Anderson and a second by Commissioner Weems, with all present voting "aye," the Board accepted the agreement between Warnock and CMU.

*Id.* at 63.   Mr. Warnock acknowledged in his deposition that anyone who reviewed the October 7, 2016, minutes would not know what the Five Point Plan Agreement was.   Mr. Warnock's Dep. [206-1] at 328.

Plaintiffs claim that Exhibit "C" to their Third Amended Complaint [118] is the Five Point Plan Agreement itself [118-3].   This purported Agreement was entered into by CMU and Warnock Engineering, LLC, with an effective date of October 7, 2016.   *See* Ex. "C" [118-3] at 3.   It bears the signatures of Charles Weems as General Manager of CMU and of Mr. Warnock on behalf of Warnock Engineering.   *Id.* at 11.   Mr. Weems' signature is dated December 15, 2016, but Mr. Warnock's signature is not dated.   *See id.*

d.   The validity of the contracts

Based upon the summary judgment record before the Court, there does not appear to be, nor can there be, any serious dispute that none of the three contracts at issue appear in the CMU Board's minute book, nor were the terms of any of these agreements recited in the minutes.   Mr. Warnock maintains that he repeatedly requested signed copies of the Agreements and was told by the CMU Board Attorney that they were in the minutes, and the attorney later provided him with an affidavit to that effect.   Mr. Warnock's Aff. [211-7] at 2.   Plaintiffs have submitted the Board Attorney's Affidavit [211-9], which avers that the Five Point Plan Agreement was approved by the Board and that the attorney provided executed copies of the contracts to Ms. Moore.   Ex. "I" [211-9] at 1-2.   According to the Board Attorney, he instructed the employee to attach the contracts to the Board minutes corresponding to the meeting at which each contract was approved.   *Id.* at 2.   However, it is not clear from this Affidavit when this conversation with Ms. Moore occurred, except that it purportedly took place while he was "still the Board Attorney for the Board."   *Id.*   This is insufficient competent summary judgment evidence from which one can conclude that these contracts were ever actually attached to the minutes.

Plaintiffs maintain that the "sufficiency of whatever may be in the minutes is a question of fact."   Pls.' Mem. [212] at 22.   However, the record before the Court does not present a jury question.   It clear that the contracts were not attached to the minutes, and no terms and conditions of any of the three contracts appear

anywhere in the minutes. It would be impossible for the public to "have access to see what was actually done," *Lange*, 972 So. 2d at 19, or for a person to determine the liabilities and obligations of the contracting parties. This is insufficient under Mississippi law. *See, e.g., Dhealthcare Consultants, Inc.*, 232 So. 3d at 194.

Plaintiffs argue that the CMU Board approved dockets of claims and paid invoices pertaining to work they performed under these Agreements. *See, e.g.,* Pls.' Mem. [212] at 8-11. The Court is not persuaded that CMU's payment for certain services rendered necessarily means that the three specific agreements at issue in Plaintiffs' breach of contract claims were legally and properly entered into by the CMU Board. Indeed, it appears that some, if not all, of these fees were paid to Warnock & Associates, a separate entity that is not a party to this case.[8]

CMU has demonstrated that it is entitled to summary judgment on Plaintiffs' breach of contract claims because there can be no genuine dispute of material fact that the three contracts upon which Plaintiffs ground their claims were not properly entered into and are not legally enforceable under Mississippi law. Nor have Plaintiffs come forward with sufficient competent summary judgment evidence to

---

[8] As the Court noted earlier, Plaintiff has presented an Affidavit from Mr. Warnock averring that Warnock & Associates, LLC, was dissolved November 8, 2017, and that all of its assets were assigned to Warnock Engineering, LLC. *See* Mr. Warnock's Aff. [211-7] at 2. Plaintiff, however, has not submitted a copy of the actual assignment, has not disclosed what specific assets pertaining to CMU were allegedly assigned to Warnock Engineering, and has not cited controlling authority that would permit such an assignment under Mississippi law. *See, e.g.,* MS AG Op. Brown, 2003 WL 21962325, at *1 (Miss. A.G. July 25, 2003) (opining that, while Mississippi Code § 21-39-13(4) permits the transfer of a claim against a municipality to a third party by assignment, a transfer or assignment of contractual duties to a third party without the knowledge or acquiescence of the board of aldermen would constitute a unilateral amendment to the contract, and such an amendment must appear in the official minutes of the meetings of the governing authority).

create a triable fact question as to the enforceability of the purported Agreements or what the terms of any Agreement were. CMU's Motion for Summary Judgment should be granted as to Plaintiffs' breach of contract claims.

      e.    <u>Plaintiffs' alternative theory of recovery under Mississippi Code § 31-7-57(2)</u>

As an alternative theory in support of their breach of contract claims, Plaintiffs rely upon Mississippi Code § 31-7-57(2), which provides as follows:

> No individual member, officer, employee or agent of any agency or board of a governing authority shall let contracts or purchase commodities or equipment except in the manner provided by law, including the provisions of Section 25-9-120(3), Mississippi Code of 1972, relating to personal and professional service contracts by state agencies; nor shall any such agency or board of a governing authority ratify any such contract or purchase made by any individual member, officer, employee or agent thereof, or pay for the same out of public funds unless such contract or purchase was made in the manner provided by law; provided, however, that *any vendor who, in good faith, delivers commodities or printing or performs any services under a contract to or for the agency or governing authority, shall be entitled to recover the fair market value of such commodities, printing or services, notwithstanding some error or failure by the agency or governing authority to follow the law, if the contract was for an object authorized by law and the vendor had no control of, participation in, or actual knowledge of the error or failure by the agency or governing authority.*

Miss. Code Ann. § 31-7-57(2) (emphasis added).

The Court questions whether this statute would even apply to Plaintiffs, and they have not attempted to explain how they would qualify as a "vendor" within the meaning of this provision. *See id.* Even if Plaintiffs were able to demonstrate they were entitled to some recovery under this statute, they have not shown that this provision precludes summary judgment on their breach of contract claims.

This statute sounds in quantum meruit recovery, and while Plaintiffs

reference quantum meruit in their Memorandum [212] in opposition to summary judgment, *see* Mem. [212] at 16, they pleaded no such claim in their Third Amended Complaint [118]. Plaintiffs did not cite Mississippi Code § 31-7-57(2) in their Third Amended Complaint and have never sought leave to amend to include such a claim.[9] In the Court's March 9, 2018, Order [115] granting Plaintiffs leave to file the Third Amended Complaint, it cautioned that "**no further amendments to their pleadings will be permitted absent good cause shown**." Order [115] at 2 (emphasis in original). Plaintiffs have not shown any good cause to allow a further amendment, and this alternative claim for relief is not properly before the Court.

f.    Plaintiffs' alternative equitable estoppel theory

Relying upon *Community Extended Care Centers, Inc. v. Board of Supervisors for Humphreys County*, 756 So. 2d 798 (Miss. Ct. App. 1999), Plaintiffs attempt to make an end-run around the minutes issue and advance an equitable estoppel argument to sustain their breach of contract claims. *See* Pls.' Mem. [212] at 23-25. Equitable estoppel may only be enforced against the State or its counties under proper circumstances, where the acts of their officers were authorized. *Bd. of Educ. of Lamar Cty. v. Hudson*, 585 So. 2d 683, 688 (Miss. 1991). "[I]n Mississippi there is no estoppel against a public body unless a valid contract is duly entered

---

[9]  *See* L.U. Civ. R. 7(b) ("[a]ny written communication with the court that is intended to be an application for relief or other action by the court must be presented by a motion in the form prescribed by this Rule."); L.U. Civ. R. 7(b)(2) (providing that, if leave of Court is required under Federal Rule of Civil Procedure 15, a proposed amended pleading must be an exhibit to a motion for leave to file the pleading).

upon the minutes, which binds that public body." *Dhealthcare Consultants, Inc.*,

232 So. 3d at 195. Without a writing upon the minutes, there is no valid contract

to enforce. *Id.*

The Mississippi Court of Appeals case upon which Plaintiffs rely is

distinguishable. *See Cmty. Extended Care Ctrs., Inc.*, 756 So. 2d at 798. At issue

in that case was a lease contract. The county's board of supervisors entered a

resolution in the minutes authorizing the board president to execute the lease,

which was then filed in the chancery clerk's office. *Id.* at 801. "What the board

had approved was immediately viewable by the public and was in no way uncertain

or hidden." *Id.* at 802.

According to the Mississippi Court of Appeals, the board had affirmatively

acknowledged the existence of the lease contract for more than 13 years by

accepting the lessee's monthly rent payments, assessing and collecting taxes under

the lease contract, and agreeing to two amendments to the lease contract. *Id.* at

800. The Court of Appeals held that the entry of the unanimous resolution

authorizing the Board president "to execute in duplicate the original of the lease,"

the filing of the lease contract in the land records of the chancery clerk's office, the

Board's subsequent approval of the amendment to the lease contract, the filing of

the amendment in the land records of the chancery clerk's office, and the entry of

the amendment in the Board minutes, "were sufficient acts to ensure that no

individual member of the Board had bound the Board without the benefit of the

consent of the Board as a whole by executing the lease contract . . . ." *Id.* at 803-04.

The Court of Appeals recognized, however, that "no estoppel may be enforced against the state or its counties where the acts of their officers were unauthorized." *Id.* at 804 (quotation omitted).

Here, Plaintiffs have not presented competent summary judgment evidence to demonstrate that Mr. Weems' purported actions of signing the three particular contracts Warnock has submitted as exhibits were authorized by the CMU Board, nor have they shown that these contracts appear anywhere in the minutes or in any other public records.   *Community Extended Care Centers* is distinguishable, and Plaintiffs' equitable estoppel argument is unavailing.

> 4.   Plaintiffs' wrongful discharge claim

Plaintiffs advance a state law claim against CMU for wrongful discharge. 3d Am. Compl. [118] at 31-32.   Specifically, they assert that as a direct and proximate result of Mr. Warnock's refusal to participate in illegal activity, and due to his reporting of the same to authorities, Mr. Anderson caused CMU to terminate Mr. Warnock from his position as CMU Engineer and to terminate Plaintiffs' contracts with CMU.   *Id.* at 31.

CMU takes the position that it is entitled to immunity on this claim and that it is otherwise time-barred under the Mississippi Tort Claims Act, Mississippi Code § 11-46-1, *et seq.* ("MTCA").   CMU's Mem. [207] at 26.   In addition, CMU contends that Mr. Warnock, as a former at-will employee, cannot maintain a wrongful discharge claim, and that the alleged termination of Warnock Engineering is not cognizable as a wrongful discharge claim.   *Id.* at 24-25.   Plaintiffs counter that a

public policy exception to the employment-at-will doctrine applies in this case because Warnock was purportedly fired for "refusing to engage in and/or reporting an unlawful act . . . ." Pls.' Mem. [212] at 30 (citing *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993)).

> The Mississippi Supreme Court
>
> has modified the employment at will doctrine by carving out a narrow public policy exception which allows an employee at-will to sue for wrongful discharge where the employee is terminated because of (1) refusal to participate in illegal activity or (2) reporting the illegal activity of his employer to the employer or anyone else.

*Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 986 (Miss. 2004). CMU did not address Plaintiffs' arguments with respect to the public-policy exception in its Rebuttal [216], nor has it adequately supported its arguments or cited relevant legal authority in its original Memorandum [207] sufficient to carry its initial burden on its immunity and statute of limitations defenses.[10] With respect to Warnock Engineering's claim, CMU offers only a conclusory assertion that it is not cognizable and cites no legal authority to support its position. *See* Mem. [207] at 25. While CMU's argument as to Warnock Engineering carries logical appeal, CMU has not supported its argument with any legal authority and has not carried its initial summary judgment burden.

In sum, CMU has not shown that it is entitled to judgment as a matter of law on Plaintiffs' wrongful discharge claims. Because CMU did not carry its initial

---

[10] CMU did not make any substantive arguments pertaining to the wrongful discharge claim in its Rebuttal [216].

summary judgment burden on these claims, the Court will deny this portion of the Motion.

5.  Plaintiffs' First Amendment claim

Plaintiffs assert a First Amendment claim under 42 U.S.C. § 1983, alleging that CMU deprived Mr. Warnock of "his rights of freedom of speech and freedom to petition for redress of grievances in violation of the First Amendment of the United States Constitution by terminating his contract with CMU as retaliation for discussing matters of public concern." 3d Am. Compl. [118] at 30. The Third Amended Complaint alleges that these matters of public concern included Mr. Anderson's offer to Mr. Warnock to arrange a murder for hire, his solicitation of a bribe and kickback, and his demands that Mr. Warnock support the hiring of Mr. Anderson's wife and "other unqualified family members." *Id.* Plaintiffs assert that after Mr. Warnock refused to participate in these activities, he reported them to City of Canton officials via text message on December 17, 2016, and discussed them with an investigator with the Madison County District Attorney's office. *Id.* Mr. Anderson and the other CMU Commissioners then allegedly conspired to retaliate against Mr. Warnock by terminating his contracts with CMU. *Id.*

a.  First Amendment retaliation

"The First Amendment's guarantee of freedom of speech protects government employees from termination *because* of their speech on matters of public concern." *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 675 (1996) (emphasis in original). "The First Amendment limits the ability of a public

employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). Thus, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.*

"To state a claim for retaliation in violation of the First Amendment, public employees . . . must allege that their employer interfered with their right to speak as a citizen on a matter of public concern." *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1420 (2016). A plaintiff generally establishes a First Amendment retaliation claim by showing that: "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 420-21 (5th Cir. 2017) (quotation omitted). A First Amendment retaliation claim by a contractor against a governmental entity based upon the contractor's speech is analyzed using the same framework as that utilized for claims by public employees. *Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015) (citing *Umbehr*, 518 U.S. at 684-85).

    b.   <u>The parties' arguments</u>

CMU's Memorandum [207] in support of its Motion for Summary Judgment says very little about Plaintiffs' § 1983 claims. CMU argues without citation to any

legal authority or evidence that termination of Mr. Warnock's contracts did not rise to the level of an abridgment or deprivation of Mr. Warnock's rights, and that the allegation that CMU retaliated against Mr. Warnock for "discussing matters of public concern" is vague and unsupported. CMU's Mem. [207] at 24. CMU also makes a conclusory assertion that it enjoys immunity from this claim and that it is time-barred. *Id.*

Plaintiffs respond that "Warnock's actions in objecting to and voicing concerns about Anderson's illegal and improper conduct clearly qualifies [sic] as protected speech." Pls.' Mem. [212] at 26. According to Plaintiffs, "[w]hether Warnock's protected activity was a motivating factor in CMU's termination decision presents a genuine dispute of fact." *Id.* Plaintiffs also state that CMU does not enjoy immunity from § 1983 liability, and that its liability should be analyzed under the United States Supreme Court's decision in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). *Id.* at 28.

CMU's Rebuttal counters that the matters on which Mr. Warnock spoke were not ones of public concern and instead constituted his own attempt to "take down Anderson before Anderson took Warnock down." CMU's Rebuttal [216] at 11. CMU contends that Mr. Warnock was not employed by CMU, and that the alleged contracts between CMU and Mr. Warnock's engineering firm(s) were void under Mississippi law. *Id.* at 3. CMU asserts that it had "multiple reasons for terminating Plaintiffs' void contracts – any one of which was sufficient to justify CMU's termination of Plaintiffs' void contracts." *Id.* at 5.

The vast majority of CMU's arguments with respect to the § 1983 claim were improperly raised for the first time in its Rebuttal [216].   *Compare* CMU's Mem. [207] at 23-24, *with* CMU's Rebuttal [216] at 2-13; *see also, e.g., United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived.").   As to this claim, CMU's original Memorandum [207] contained only conclusory assertions, unsupported by citation to evidence, as follows:

> CMU is not liable for Plaintiff Warnock's claims made pursuant to 42 U.S.C. Section 1983 as Warnock is unable to support how Warnock's First Amendment rights were deprived by CMU's termination of the alleged contracts with Warnock Engineering . . . .
> . . . Termination of Warnock's purported contracts, even under the facts espoused by Warnock, does not show an abridgment or deprivation of Warnock's rights, and Warnock merely posits his conclusion without any factual support related to CMU.   Warnock's conjecture that CMU retaliated for "discussing matters of public concern" is vague and unsupported, and cannot stand to support a claim under 42 U.S.C. § 1983.
> Despite the complete lack of specificity and clarity of Plaintiffs' claim, CMU would also maintain that it enjoys immunity from such charge and simultaneously maintains that the MTCA would act to time-bar this action.   Consequently, CMU is entitled to summary judgment.

CMU's Mem. [207] at 23-24.   The Court will not consider additional arguments raised for the first time in the Rebuttal [216], which Plaintiffs have not had the opportunity to address.   Moreover, these arguments are not adequately briefed.

c.    CMU's immunity argument

CMU makes a conclusory assertion that "it enjoys immunity" from Plaintiffs' § 1983 claim, without any elaboration as to what type of immunity might apply to it under these circumstances.   CMU's Mem. [207] at 24.   CMU has not carried its

initial burden of showing that it is entitled to summary judgment on this basis.

d.   CMU's statute of limitations defense

CMU posits that Plaintiffs' § 1983 claim is time-barred under the MTCA. CMU's Mem. [207] at 24.   "Because no specified federal statute of limitations exists for § 1983 suits, federal courts borrow the forum state's general or residual personal-injury limitations period, . . . which in Mississippi is three years." *Edmonds v. Oktibbeha Cty., Miss.*, 675 F.3d 911, 916 (5th Cir. 2012) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); Miss. Code Ann. § 15-1-49).   The parties do not appear to dispute that the actions which are the subject of this case occurred in 2016, less than three years ago.   *See, e.g.,* CMU's Mem. [207] at 3; 3d Am. Compl. [118] at 5.   CMU has not shown that Plaintiff's First Amendment retaliation claim is time-barred.

With respect to the merits of Plaintiffs' § 1983 claim, CMU's original Memorandum [207] in support of its Motion offered only conclusory assertions, unsupported by citation to evidence or pertinent legal authority supporting the specific arguments raised.   *See* CMU's Mem. [207] at 23-24.   CMU did not carry its initial burden of showing that there is no genuine dispute of material fact or that it is entitled to judgment as a matter of law on this claim.   Because CMU has not carried its initial burden on this claim, summary judgment should be denied.

e.   Plaintiffs' due process assertions

In response to CMU's request for summary judgment, Plaintiffs assert that CMU's purported failure to provide any notice or opportunity to be heard prior to

any termination constituted a separate, actionable due process violation.   Pls.'
Mem. [212] at 27.   However, Plaintiffs did not raise any due process claim in their
Third Amended Complaint.[11]

If a party cannot amend its pleading as a matter of course, it may amend the
pleading "only with the opposing party's written consent or the court's leave."   Fed.
R. Civ. P. 15(a)(2).   In this case, Plaintiffs have not requested leave to amend their
Third Amended Complaint, nor have they obtained CMU's written consent to such
an amendment.

The Court's March 9, 2018, Order [115], which granted Plaintiffs leave to file
their Third Amended Complaint, cautioned Plaintiffs that "**no further
amendments to their pleadings will be permitted absent good cause
shown**."   Order [115] at 2 (emphasis in original).   Plaintiffs have not shown any
such good cause.   Any claim for an alleged due process violation is not properly
before the Court.

### III.   CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it
has considered them and determined that they would not alter the result.   CMU's
Motion [206] for Summary Judgment will be granted in part and denied in part, and
Plaintiffs' claims against CMU for copyright infringement, RICO violations,

---

[11]   It appears that Plaintiffs first alleged a due process violation under 42 U.S.C. § 1983 in
their Memorandum [151] in opposition to CMU's Motion [126] to Dismiss.   *See* Pls.' Mem.
[151] at 20.   However, they never raised such a claim in their original Complaint [1], First
Amended Complaint [9], Second Amended Complaint [65], or Third Amended Complaint
[118].

injunctive relief, negligence, open account, misappropriation, declaratory judgment, and breach of contract will be dismissed.[12]   Plaintiffs' claims for wrongful discharge and for First Amendment retaliation under 42 U.S.C. § 1983 will proceed.   CMU's Motion [126] to Dismiss is moot.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Canton Municipal Utilities' request for a hearing on its Motion [206] for Summary Judgment is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Canton Municipal Utilities' Motion [206] for Summary Judgment is **GRANTED IN PART and DENIED IN PART**, and Plaintiffs' claims against Defendant Canton Municipal Utilities for copyright infringement, RICO violations, injunctive relief, negligence, open account, misappropriation, declaratory judgment, and breach of contract are **DISMISSED WITH PREJUDICE**.   Plaintiffs' claims for wrongful discharge and for retaliation in violation of the First Amendment under 42 U.S.C. § 1983 will proceed.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion [126] to Dismiss filed by Defendant Canton Municipal Utilities is **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED**, this the 21st day of December, 2018.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

---

[12] As noted earlier, Plaintiffs previously dismissed their defamation claim pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).   *See* Notice [134] at 1.