IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| WARNOCK ENGINEERING, LLC, | § | |
| and RUDOLPH M. WARNOCK, JR. | § | PLAINTIFFS |
| | § | |
| | § | |
| v. | § | Civil No. 3:17cv160-HSO-JCG |
| | § | |
| | § | |
| CANTON MUNICIPAL UTILITIES | § | DEFENDANT |

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS'
MOTION [221] FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
FOR LEAVE TO AMEND COMPLAINT; DENYING AS MOOT PLAINTIFFS'
MOTION [230] FOR LEAVE TO FILE AMENDED REPLY BRIEF;
GRANTING DEFENDANT CANTON MUNICIPAL UTILITIES'
MOTION [228] FOR SUMMARY JUDGMENT; FINDING MOOT
PLAINTIFFS' MOTIONS [237], [239], [243] TO EXCLUDE;
AND FINDING MOOT DEFENDANT'S MOTION [241] TO STRIKE

BEFORE THE COURT are the following Motions:  (1) a Motion [221] for

Reconsideration or, in the Alternative, for Leave to Amend Complaint filed by

Plaintiffs Warnock Engineering, LLC, and Rudolph M. Warnock, Jr.; (2) a Motion

[228] for Summary Judgment filed by Defendant Canton Municipal Utilities; (3) a

Motion [230] for Leave to File Amended Reply Brief filed by Plaintiffs Warnock

Engineering, LLC, and Rudolph M. Warnock, Jr.; (4) a Motion [237] to Exclude

Testimony of Defendant's Expert Joseph E. Hines filed by Plaintiffs Warnock

Engineering, LLC, and Rudolph M. Warnock, Jr.; (5) a Motion [239] to Exclude

Testimony of Defendant's Expert John M. Wallace filed by Plaintiffs Warnock

Engineering, LLC, and Rudolph M. Warnock, Jr.; (6) a Motion [241] to Strike

Plaintiffs' Expert Designations filed by Defendant Canton Municipal Utilities; and

(7) Motion [243] to Exclude or Limit Opinions of Defendant's Proposed Expert Dax

Alexander, P.E., filed by Plaintiffs Warnock Engineering, LLC, and Rudolph M.

Warnock, Jr.

After due consideration of the Motions [221], [228], [230], [237], [239], [241],

[243], related pleadings, the record, and relevant legal authority, the Court finds

that Plaintiffs' Motion [221] for Reconsideration or, in the Alternative, for Leave to

Amend Complaint should be denied, that Plaintiffs' Motion [230] for Leave to File

Amended Reply Brief is moot, and that Defendant's Motion [228] for Summary

Judgment should be granted.   Plaintiffs' remaining claims should be dismissed.

The remaining Motions [237], [239], [241], [243], are rendered moot.

## I.   BACKGROUND

A.   Factual background

According to the Third Amended Complaint [118], which is the operative

pleading in this case, Plaintiff Warnock Engineering, LLC ("Warnock Engineering"),

is an engineering firm owned by Plaintiff Rudolph M. Warnock, Jr. ("Mr. Warnock").

3d Am. Compl. [118] at 4.   Warnock Engineering and Mr. Warnock (collectively,

"Plaintiffs") began providing engineering services to Defendant Canton Municipal

Utilities ("CMU") in January 2016 and worked on a number of projects for CMU.

*Id.*   CMU is a public utility commission within the City of Canton, Mississippi, and

is managed by a five-member Board of Commissioners.   *See* Pls.' Mem. [212] at 1.

Plaintiffs allege that Warnock Engineering entered into three written

contracts with CMU, and the Board of Commissioners of CMU (the "CMU Board")
terminated CMU's arrangements with all engineers other than Plaintiffs in August
2016, making Mr. Warnock the exclusive engineer for CMU.   3d Am. Compl. [118]
at 4-5.   The Third Amended Complaint claims that Cleveland Anderson ("Mr.
Anderson") was appointed to the CMU Board on June 7, 2016, and was later
removed in June 2017.   *Id.* at 4-5.   At some point before he was removed, Mr.
Anderson became Chairman.   *Id.* at 10.

Plaintiffs maintain that during a meeting with Mr. Warnock on September
18, 2016, Mr. Anderson offered to arrange the murder of a journalist in exchange for
$10,000.00.   Later, on September 25, 2016, Mr. Anderson allegedly offered to
arrange the murder of the mayor of Madison, Mississippi, also for $10,000.00.   *Id.*
at 4-5.   Plaintiffs allege that prior to Mr. Warnock proposing what is known as the
"Five Point Plan Agreement" to the CMU Board, Mr. Anderson asked Mr. Warnock
"if Anderson could get paid for his vote to approve the agreement," a request which
Mr. Warnock refused.   Mr. Anderson allegedly subsequently requested a
$200,000.00 kickback in a meeting held on October 6, 2016.   *Id.* at 6.   Mr. Warnock
again refused.   *Id.*   Plaintiffs assert that they did not adjust the price of the
proposed $1,474,000.00 Five Point Plan Agreement, and that it was approved by
unanimous vote of the CMU Board at its meeting held on October 7, 2016.   *Id.* at 7.

In September 2016, the CMU Board unanimously voted to place Mr. Warnock
on the CMU Personnel Committee.   *Id.*   Mr. Anderson also served on this
Committee.   *Id.*   According to Plaintiffs, Mr. Anderson was heavily involved in

restructuring the CMU, including adding new departments and new positions, and

"insisted that CMU hire his wife in a newly created General Counsel Department."

*Id.*   When outside counsel advised Mr. Anderson that hiring his wife at CMU would

be illegal, he withdrew her name from consideration for possible employment.   *Id.*

Mr. Warnock asserts that he expressed frustration to City of Canton officials

over Mr. Anderson's attempts to solicit kickbacks and other improper benefits.   *Id.*

at 8.   Mr. Anderson allegedly retaliated by influencing other CMU Commissioners

and making motions to fire outside counsel and terminate Plaintiffs from all CMU

engineering and personnel work.   *Id.* at 9.   As a result, Mr. Warnock was informed

by letters dated December 29, 2016, and January 17, 2017, that the CMU Board

had voted to terminate its contracts with Warnock Engineering.   *Id.* at 10.

Plaintiffs accuse Mr. Anderson, as Chairman of the CMU Board, of orchestrating

the termination, *id.* at 10, because Mr. Warnock had "refused to provide bribes and

kickbacks, and consent to the illegal and improper hiring of relatives and friends,

demanded by [Mr.] Anderson," *id.* at 11.

B.   Procedural history

Plaintiffs filed the original Complaint [1] in this case on March 9, 2017, and

have amended their Complaint three times.   The Third Amended Complaint [118],

which is the operative pleading, asserted claims against CMU for copyright

infringement, vicarious and contributory infringement, wrongful discharge, breach

of contract, open account, negligence, defamation, misappropriation of

advertising/commercial materials, and violations of the Racketeer Influenced and

4

Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(b), and the First
Amendment under 42 U.S.C. § 1983.   *See* 3d Am. Compl. [118] at 19-23, 24-26.[1]
After resolving CMU's Motion [126] to Dismiss and its Motion [206] for Summary
Judgment, the only of Plaintiffs' claims that remain for resolution by the Court are
those for wrongful discharge under state law and for retaliation in violation of the
First Amendment under 42 U.S.C. § 1983.

Plaintiffs have filed a Motion [221] for Reconsideration or, in the Alternative,
for Leave to Amend Complaint.   While the focus of this Motion [221] appears to be
the Court's dismissal of Plaintiffs' breach of contract claims, Plaintiffs do not
specifically request that the Court reconsider its ruling that the three written
agreements with CMU were unenforceable.   Instead, Plaintiffs argue that the
Court improperly disposed of an alternative theory of equitable relief which they
maintain is available to them under Mississippi Code § 31-7-57(2).   *See* Pl.'s Mem.
[222] at 1-4.   Plaintiffs ask that, in the event they have not adequately pled this
theory, the Court permit them to amend the current Third Amended Complaint "for
the limited purpose of adding an alternative label to the Breach of Contract count of
the Complaint."   *Id.* at 4.

Plaintiffs have also filed a Motion [230] for Leave to File Amended Reply
Brief in support of their Motion [221] for Reconsideration or, in the Alternative, for

---

[1] The Third Amended Complaint [118] also advanced claims against Mr. Anderson alone
under RICO, 18 U.S.C. §§ 1962(c) and 1962(d), *see* 3d Am. Compl. [118] at 23-24, 26-27, and
the Mississippi Racketeer Influenced and Corrupt Organization Act ("Mississippi RICO"),
Mississippi Code §§ 97-43-1 through 11, *see id.* at 27-29, and for tortious interference with
contract, *see id.* at 32.   However, the parties filed a Stipulation [146] of Dismissal of Mr.
Anderson on April 23, 2018, and he is no longer a Defendant.

Leave to Amend Complaint.   Plaintiffs do not attach a proposed amended Reply to

their Motion [230].   Instead, they relay that the primary purpose of this Motion

[230] is "to include a brief but important point about the case of *Southland*

*Enterprises, Inc. v. Newton County*, 940 So. 2d 937 (Miss. Ct. App. 2006)."   Pls.'

Mot. [230] at 1.   According to Plaintiffs, the Mississippi Court of Appeals ruled in

that case that "[a] remedy by statute will not fail if the pleading states sufficient

allegations which notify the court and the opposing party that the allegations fall

within the statute, even though the statute is not named in the pleadings."   *Id.* at

1-2 (quoting *Southland Enterprises*, 940 So. 2d at 944).   According to Plaintiffs,

this ruling "is consistent with the federal notice pleading standards which allow for

a short and plain statement of the claim and a general prayer for relief."   *Id.* at 2.

CMU has filed a Motion [228] for Summary Judgment, asking the Court to

dismiss Plaintiffs' two remaining claims.   CMU argues that Eleventh Amendment

immunity mandates dismissal of the § 1983 claim, *see* CMU's Mem. [229] at 6-7,

and that Plaintiffs have failed to identify or allege an official policy or custom

causing constitutional injury and that, as a municipality, it cannot be held

vicariously liable for the unconstitutional torts of its employees or agents, *id.* at 7-9.

CMU also contends that Plaintiffs cannot establish the elements of a First

Amendment retaliation claim.   *See id.* at 9-11.

With respect to the state law wrongful discharge claim, CMU argues that it

enjoys immunity from this claim under the Mississippi Tort Claims Act, Mississippi

Code § 11-46-1, *et seq.* ("MTCA"), and that it should otherwise be dismissed as time-

barred, for failure to provide proper notice, and for failure to exhaust administrative remedies.   *Id.* at 11-13.   CMU further asserts that Plaintiffs' allegation that Anderson acted outside the scope of his employment with CMU bars the wrongful discharge claim as against CMU.   *Id.* at 13-14.

Finally, after all the Motions discussed above were fully briefed, the parties filed four Motions pertaining to expert witnesses.   Plaintiffs filed Motions [237], [239] to Exclude Testimony of Defendant's Experts Joseph E. Hines and John M. Wallace, as well as a Motion [243] to Exclude or Limit Opinions of Defendant's Proposed Expert Dax Alexander, P.E.   Defendant filed a Motion [241] to Strike Plaintiffs' Expert Designations.   These four Motions relating to experts do not impact the Court's resolution of Plaintiffs' Motion [221] for Reconsideration or, in the Alternative, for Leave to Amend Complaint and Motion [230] for Leave to File Amended Reply Brief, or its resolution of Defendant's Motion [228] for Summary Judgment.

## II.   DISCUSSION

A.   Plaintiffs' Motion [230] for Leave to File Amended Reply Brief

Plaintiffs did not attach a proposed amended Reply brief with their Motion [230] for Leave to File Amended Reply Brief.   While the title of Plaintiffs' Motion [230] indicates that they wish to file an amended Reply brief, a plain reading of the Motion [230] itself makes clear that Plaintiffs merely seek to bring the Court's attention to the 2006 Mississippi Court of Appeals decision, *Southland Enterprises, Inc. v. Newton County*, 940 So. 2d 937 (Miss. Ct. App. 2006), and argue how it

applies to the present case.   Even though this case was clearly available to

Plaintiffs before they filed their Motion [221] for Reconsideration and supporting

Reply, the Court will consider all of the parties' arguments and all relevant legal

authority in rendering its decision on the pending Motions.   Plaintiffs' Motion [230]

for Leave to File Amended Reply Brief is therefore moot.

B.    Plaintiffs' Motion [221] for Reconsideration or, in the Alternative, for Leave
       to Amend Complaint

This Motion [221] focuses on Plaintiffs' breach of contract claims, which the

Court dismissed in its Order [218] entered on December 21, 2018.   Plaintiffs do not

ask the Court to reconsider its ruling that the three written agreements with CMU

were unenforceable.   Instead, they posit that the Court improperly disposed of an

alternative theory of equitable relief which they maintain is available to them

under Mississippi Code § 31-7-57(2).   *See* Pl.'s Mot. [221] at 1-2; Pl.'s Mem. [222] at

1-4.   Plaintiffs seek leave to amend their Third Amended Complaint "for the

limited purpose of adding an alternative label to the Breach of Contract count of the

Complaint."   Pl.'s Mem. [222] at 4.   However, Plaintiffs have not attached a

proposed Fourth Amended Complaint to their Motion [221].

1.    Plaintiffs' Request for Reconsideration

Plaintiffs seek reconsideration of an interlocutory ruling.   Federal Rule of

Civil Procedure 54(b) provides that

> any order or other decision, however designated, that adjudicates fewer
> than all the claims or the rights and liabilities of fewer than all the
> parties does not end the action as to any of the claims or parties and may
> be revised at any time before the entry of a judgment adjudicating all
> the claims and all the parties' rights and liabilities.

8

Fed. R. Civ. P. 54(b).   "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quotation omitted).

In opposition to CMU's earlier Motion [206] for Summary Judgment, Plaintiffs argued in their brief that CMU had improperly ignored the effects of Mississippi statutory law, specifically Mississippi Code § 31-7-57(2), in seeking summary judgment on Plaintiffs' breach of contract claims.   *See* Pls.' Mem. [212] at 18.   This statute sounds in quantum meruit recovery, *see* Miss. Code Ann. § 31-7-57(2), and the Court determined that Plaintiffs had pleaded no such claim in their Third Amended Complaint, *see* Order [218] at 20-21.

The Court found that, even construing Plaintiffs' pleadings "so as to do justice" under Federal Rule of Civil Procedure 8(e), they did not plead enough to sufficiently state a claim under Mississippi Code § 31-7-57(2).   Plaintiffs did not raise quantum meruit as a theory of recovery in their Third Amended Complaint, nor did they cite Mississippi Code § 31-7-57(2).   The Third Amended Complaint further lacked sufficient factual allegations to reasonably place the Court or CMU on notice that Plaintiffs' allegations fell within the scope of the statute, or that Plaintiffs were seeking recovery on a quantum meruit basis for any services purportedly rendered.[2]   Moreover, the Court questioned whether this statute would

---

[2]  Plaintiffs did not make any alternative statements of the breach of contract claims, even though they could have.   *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more

even apply to Plaintiffs in this case.   *See* Order [218] at 20.

Plaintiffs' reliance upon *Southland Enterprises, Inc. v. Newton County*, 940 So. 2d 937 (Miss. Ct. App. 2006), to seek reconsideration is unavailing.   The question is whether the Third Amended Complaint contained sufficient factual detail to state a claim under Mississippi Code § 31-7-57(2) according to federal procedural law.

Moreover, *Southland Enterprises* is factually distinguishable, as it involved a prejudgment interest award under a different statute, Mississippi Code § 31-5-25, which deals with interest on sums due contractors.   *See Southland Enterprises*, 940 So. 2d at 944 (citing Miss. Code Ann. § 31-5-25).   While plaintiffs there had not "plead[ed] for relief under this particular statute," the Mississippi Court of Appeals held that "[a] remedy by statute will not fail if the pleading states sufficient allegations which notify the court and the opposing party that the allegations fall within the statute, even though the statute is not named in the pleadings."   *Id.* There is no indication in that case that the plaintiffs had not requested prejudgment interest in their complaint, only that they did not plead the "particular statute."   *See id.*   Here, as the Court has already stated, the Third Amended Complaint did not contain sufficient factual allegations to place either the Court or CMU on notice that Plaintiffs' claims fell within the scope of Mississippi Code § 31-

---

statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.   If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

7-57(2), or that Plaintiffs were seeking recovery for any services on a theory of quantum meruit.

In sum, Plaintiffs have not shown a sufficient reason under Rule 54(b) for the Court to reconsider its ruling on the breach of contract claims.   Plaintiffs' request for reconsideration is not well taken and will be denied.

2.    Alternative Request for Leave to File Fourth Amended Complaint

Plaintiffs alternatively seek leave to amend their pleadings, for the fourth time in this litigation, to assert a claim for relief under Mississippi Code § 31-7-57(2).   Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiffs may amend their pleading "only with the opposing party's consent or the court's leave."   Fed. R. Civ. P. 15(a)(2).   CMU opposes Plaintiffs' request to amend, so leave of Court is required.   *See id.*

Local Uniform Civil Rule 15 provides that "[i]f leave of court is required under Fed. R. Civ. P. 15, a proposed amended pleading must be an exhibit to a motion for leave to file the pleading . . . ."   L.U. Civ. R. 15.   Plaintiffs have not attached a proposed amended pleading to their Motion and have not complied with the Court's Local Rules in seeking leave to amend.   *See id.*   The request to amend should be denied for this reason alone.

In addition, Plaintiffs have already amended their Complaint three times in this case, which has been pending for over two years, and the Court has previously cautioned Plaintiffs that "**no further amendments to their pleadings will be permitted absent good cause shown**."   Order [115] at 2 (emphasis in original).

Plaintiffs have not shown any good cause to allow a further amendment at this late date.

"Permissible reasons for denying a motion for leave to amend include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, futility of amendment, etc." *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019) (quotation omitted).   As the Court noted in its earlier Order [218], Plaintiffs have not shown how Mississippi Code § 31-7-57(2) would even apply in this case, making their proposed amendment futile.   In addition, at this advanced stage of litigation, allowing yet another amendment to add a new claim would cause undue prejudice to CMU, and the record reflects that Plaintiffs have repeatedly failed to cure deficiencies with prior amendments to their pleadings.   *See id.*   In sum, Plaintiffs' request to file a Fourth Amended Complaint is not well taken and will be denied.

C.     CMU's Motion for Summary Judgment

1.     Relevant legal standard

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A fact is "material" if it is one that might affect the outcome of the suit under governing law, and a dispute is "genuine" if a jury could return a verdict for the non-movant based upon the evidence in the record.   *Renwick v. PNK Lake*

*Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018).

If the party seeking summary judgment shows the non-movant's case lacks support, the non-movant is tasked with coming forward with "specific facts" showing a genuine factual issue for trial.   *Id.*   A court considering a summary judgment motion must "view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in the non-movant's favor."   *Id.* (quotation omitted).   However, if a non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment remains appropriate.   *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

2.   <u>Plaintiffs' First Amendment retaliation claim</u>

The Third Amended Complaint advances a First Amendment retaliation claim under 42 U.S.C. § 1983, alleging that CMU deprived Mr. Warnock of "his rights of freedom of speech and freedom to petition for redress of grievances in violation of the First Amendment of the United States Constitution by terminating his contract with CMU as retaliation for discussing matters of public concern."   3d Am. Compl. [118] at 30.   Plaintiffs allege that these matters of public concern included Mr. Anderson's offer to Mr. Warnock to arrange a murder for hire, his solicitation of a bribe and kickback, and his demands that Mr. Warnock support the hiring of Mr. Anderson's wife and "other unqualified family members."   *Id.*

Plaintiffs assert that after Mr. Warnock refused to participate in these activities, he reported them to City of Canton officials via text message on

December 17, 2016, and discussed them with an investigator with the Madison
County District Attorney's office.   *Id.*   According to the pleadings, Mr. Anderson
and the other CMU Commissioners then purportedly conspired to retaliate against
Mr. Warnock by terminating his contracts with CMU.   *Id.*

      a.   The parties' arguments

CMU argues that it enjoys Eleventh Amendment immunity from the § 1983
claim.   *See* CMU's Mot. [229] at 6-7.   In the alternative, CMU asserts that
dismissal is appropriate because Plaintiffs have not stated a claim for relief.   Even
if they have, Plaintiffs have not identified or alleged an official policy or custom that
purportedly caused them constitutional injury.   *Id.* at 7-11.

Plaintiffs respond that CMU's Eleventh Amendment immunity argument is
"meritless," because this is a suit against the subdivision of a municipality, not the
State, Pl.'s Mem. [234] at 15, and because CMU's official actions are actionable
under § 1983 by virtue of the action taken by the Commission itself, *id.* at 16-19.
Plaintiffs claim that "Warnock's actions in objecting to and voicing concerns about
Anderson's illegal and improper conduct clearly qualify as protected speech."   *Id.* at
19.   The speech consisted of "publicly revealed texts from Anderson wherein he
admitted soliciting an illegal kickback from Warnock."   *Id.* at 18-19.   Without
citation to the record, Plaintiffs claim that Anderson then "orchestrated Warnock's
ouster from CMU."   *Id.* at 19.

CMU's Rebuttal [235] maintains that Eleventh Amendment immunity
applies because "Plaintiffs' suit implicates a burden upon the treasury of the State

of Mississippi."   CMU's Rebuttal [235] at 9.   According to CMU, "if Plaintiffs are successful in achieving the total depletion of CMU's reserves that Warnock has thus far sought, then the State of Mississippi would necessarily be burdened if CMU, a public utility, were bankrupted by recovery in the instant litigation," *id.* at 10, and "Eleventh Amendment immunity should bar suit here due to the likelihood that Plaintiffs' suit will economically cripple CMU and will require State intervention," *id.* at 11.

CMU also argues that it cannot be held liable under §1983 because no CMU official is a party to the lawsuit, Plaintiffs' claims rest upon "'out of scope acts' of an illegal nature," and their "claims attempt to meld liability for officials from two distinct governmental entities, namely City Aldermen and the CMU Board . . . ." *Id.* at 2.   According to CMU, Plaintiffs have failed to identify an official CMU policy that is connected to an identifiable harm and that, instead, they have identified only an isolated or single alleged violation based upon "out of scope actions of Anderson."   *Id.* at 5.   Finally, CMU contends that Plaintiffs have not "overcome CMU's stated and well-founded reasons for termination."   *Id.* at 9.

    b.    <u>Eleventh Amendment immunity</u>

States enjoy sovereign immunity from suit, and when a state agency or an arm of the state is the named defendant, the Eleventh Amendment bars suits in federal court unless the state has waived its immunity.   *Sissom v. Univ. of Texas High Sch.*, 927 F.3d 343, 347 (5th Cir. 2019) (quotation omitted).   This immunity does not extend to units of local government.   *Id.*

In order to determine whether a unit of local government is an arm of the state entitled to Eleventh Amendment immunity, the United States Court of Appeals for the Fifth Circuit employs the following six-factor test:   1) whether the state statutes and case law view the agency as an arm of the state; 2) the source of the entity's funding; 3) the entity's degree of local autonomy; 4) whether the entity is concerned primarily with local as opposed to statewide problems; 5) whether the entity has the authority to sue and be sued in its own name; and 6) whether the entity has the right to hold and use property.   *See Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147-48 (5th Cir. 1991).   The most significant of these factors is whether a judgment against the entity will be paid with state funds.   *See id.*; *see also Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.") (quotation omitted).

In this case, it is beyond dispute that the first, third, fourth, fifth, and sixth factors do not weigh in favor of finding CMU an arm of the State of Mississippi. Nor does CMU argue in favor of such a finding.   CMU instead states that it "is a public utility commission created by the City of Canton, Mississippi, pursuant to Mississippi Code Annotated Section 21-27-13 *et seq.*"   CMU's Mem. [229] at 7.   In advancing its immunity theory, CMU relies solely upon the fact that a large judgment may burden the treasury of the State of Mississippi.   *See* CMU's Rebuttal [235] at 10-11.

16

CMU has not identified any direct burden on the State's treasury, nor has it cited legal authority to identify the source of its funding.   Instead, CMU offers a convoluted and highly conjectural potential scenario regarding how the State's treasury might be burdened by a judgment against it:   (1) Plaintiffs' fees for services and the contract upon which they predicate their claims "were set at the amount of CMU's emergency reserves, and actually contemplated securing debt on CMU's behalf to exceed those amounts"; (2) "CMU's emergency reserves exist to fund emergencies related to water, sewer, gas and electric utilities, were comprised of customers' deposit monies, and the funds involved the Public Services Commission"; (3) if Plaintiffs were successful in this lawsuit, CMU's emergency reserves may be depleted and CMU "economically cripple[d]"; and (4) if "CMU, a public entity, were bankrupted by recovery in the instant litigation," then the State of Mississippi would be burdened, as State intervention would be required.   *Id.*[3]

CMU's argument essentially piles conjecture upon conjecture in an attempt to show how the treasury of the State of Mississippi might be impacted by a judgment, without adequate citation to legal authority supporting its assertions. CMU has not shown that any of the factors delineated by the Fifth Circuit weigh in favor of finding it immune from suit under the Eleventh Amendment.   *See Delahoussaye*, 937 F.2d at 147-48.

---

[3] CMU did not make these arguments in its original Memorandum, but only generally alleged Eleventh Amendment immunity.   *See* CMU's Mem. [229] at 6-7.   In CMU's Rebuttal, it raises these new assertions, without citation to legal authority, relying only on portions of Mr. Warnock's deposition.

c.     Claims for retaliation under the First Amendment

A local governmental entity faces liability under 42 U.S.C. § 1983 only if

action pursuant to official policy of some nature caused a constitutional tort.

*Griggs v. Chickasaw Cty.*, 930 F.3d 696, 704 (5th Cir. 2019) (quoting *Monell v. Dep't*

*of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978)).    In order to succeed on a §

1983 claim against a local governmental entity, a plaintiff must generally prove the

following: (1) the existence of an official policy; (2) promulgated by the unit's

policymaker; (3) that was the moving force behind a violation of a constitutional

right.    *See id.*; *see also Young v. Bd. of Supervisors of Humphreys Cty.,* 927 F.3d

898, 903 (5th Cir. 2019).    "[I]t is plain that municipal liability may be imposed for a

single decision by municipal policymakers under appropriate circumstances," as "a

municipality may be liable under § 1983 for a single decision by its properly

constituted legislative body . . . because even a single decision by such a body

unquestionably constitutes an act of official government policy."    *Pembaur v. City*

*of Cincinnati*, 475 U.S. 469, 480 (1986).

In this case, Plaintiffs contend CMU retaliated against them for exercising

their First Amendment rights by taking action at a CMU Commissioners' meeting

to terminate CMU's business relationship with Plaintiffs.    This is sufficient to

satisfy the first two prongs of the test.    The question remains whether the official

action by CMU was the moving force behind the violation of any constitutional

right.

"The First Amendment's guarantee of freedom of speech protects government

employees from termination *because* of their speech on matters of public concern."
*Bd. of Cty. Comm'rs, Wabaunsee Cty. v. Umbehr*, 518 U.S. 668, 675 (1996)
(emphasis in original).   "The First Amendment limits the ability of a public
employer to leverage the employment relationship to restrict, incidentally or
intentionally, the liberties employees enjoy in their capacities as private citizens."
*Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006).   This means that, as long as
employees are speaking as citizens about matters of public concern, their speech
may only be burdened to the extent such restrictions are necessary for their
employers to operate efficiently and effectively.   *See id.*

"To state a claim for retaliation in violation of the First Amendment, public
employees . . . must allege that their employer interfered with their right to speak
as a citizen on a matter of public concern."   *Heffernan v. City of Paterson*, 136 S. Ct.
1412, 1420 (2016).   A plaintiff generally establishes a First Amendment retaliation
claim by showing that: "(1) he suffered an adverse employment action; (2) he spoke
as a citizen on a matter of public concern; (3) his interest in the speech outweighs
the government's interest in the efficient provision of public services; and (4) the
speech precipitated the adverse employment action."   *Moss v. Harris Cty.*
*Constable Precinct One*, 851 F.3d 413, 420-21 (5th Cir. 2017) (quotation omitted).
A First Amendment retaliation claim by a contractor against a governmental entity
based upon the contractor's speech is analyzed using the same framework as that
utilized for claims by public employees.   *Culbertson v. Lykos*, 790 F.3d 608, 618
(5th Cir. 2015) (citing *Umbehr*, 518 U.S. at 684-85).

In assessing causation, a plaintiff bears the initial burden "to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor' or to put it in other words, that it was a 'motivating factor'" in the employer's decision. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Haverda v. Hays Cty.*, 723 F.3d 586, 592 (5th Cir. 2013). Temporal proximity between an employee's protected activity and any adverse action is not always sufficient to show First Amendment retaliation. *See Cripps v. Louisiana Dep't of Agric. & Forestry*, 819 F.3d 221, 230 (5th Cir. 2016). Even at the prima facie stage, a plaintiff cannot establish that protected activity was a motivating factor in his termination by temporal proximity alone, but only if there is also evidence of the decisionmaker's knowledge of the protected activity. *See Dearman v. Stone Cty. Sch. Dist.*, 832 F.3d 577, 582 (5th Cir. 2016).

If a plaintiff carries his or her burden, the defendant must show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287; *see also Dearman*, 832 F.3d at 581. However, an employee may "refute that showing by presenting evidence that his employer's ostensible explanation for the discharge is merely pretextual." *Haverda*, 723 F.3d at 592 (quotation omitted).

Under § 1983, "[w]hen the municipality's policymaker is a multimember board, the separate actions of individual members of the Board are not sufficient to bind the Board as an entity." *Griggs*, 930 F.3d at 704 (quotation omitted). In order to charge retaliatory animus to the entity itself, a plaintiff is "required to

20

show that a majority of the Board had retaliatory animus." *Id.*

      d.    <u>Plaintiffs' claim</u>

Mississippi Code § 21-27-13 permits the governing authority of a municipality to create a commission that "shall consist of not less than three (3) nor more than five (5) commissioners, to be elected by the governing authorities of such municipality." Miss. Code Ann. § 21-27-13. "Such commissioners shall have the power, authority and duty to manage and control said system or systems and the supply of the facilities and services thereof, both within and without the limits of the municipality." *Id.*

While the parties have not explained how CMU was formed, it appears from the record as a whole that the City of Canton's Board of Aldermen created CMU pursuant to Mississippi Code § 21-27-13, and that the CMU Board of Commissioners consisted of five commissioners. *See, e.g.,* Oct. 7, 2016, Minutes [206-7] at 1; *see also* Pl.'s Mem. [234] at 1 ("CMU is managed by a five (5) member board of commissioners who are appointed by the Canton Mayor and Board of Aldermen.").

Plaintiffs support their retaliation claim by referring to text messages that Mr. Warnock sent on December 17, 2016, "to various public officials expressing concern that Anderson was corrupt and unfit to serve on the CMU Board." Pl.'s Mem. [234] at 2. The conduct referenced was that of Mr. Anderson, but not that of any of the other Commissioners. *See* Text Messages [211-3] at 1-4. While it appears that the telephone numbers of some City Aldermen and CMU

Commissioners may have been included on at least some of the text messages between Mr. Anderson and Mr. Warnock, no one else copied on the group text messages appears to have responded to any of Mr. Warnock's messages.   *See id.*

On December 22, 2016, a special "emergency meeting" of the Board of the Mayor and Board of Aldermen of Canton, Mississippi, was held.   Canton Mayor Arnel D. Bolden was not in attendance, but four City Aldermen were present – Les Penn, Andrew Grant, Eric Gilkey, and Olivia Harrell.   *See* Mayor's Veto [211-1] at 133.   A motion was made and seconded to replace Mr. Anderson as a CMU Commissioner with Bob Winstead, and it passed by a unanimous vote.   *Id.* However, Mayor Bolden objected to and vetoed the replacement, asserting that this meeting did not constitute a legal meeting.   *Id.*   None of this conceivably constituted any action against Plaintiffs.

Also on December 22, 2016, Mr. Anderson made a motion at a CMU Board of Commissioners meeting to terminate Mr. Warnock's services, listing eight reasons as grounds for his termination.   *See* Dec. 22, 2016, Minutes [211-1] at 130.   CMU Commissioner L.C. Slaughter seconded the motion.   *Id.*   Mr. Anderson and two other Commissioners, L.C. Slaughter and Cleotha Williams, voted in favor of the motion, and two Commissioners, Chairman Charles Weems and Charlie Morgan, abstained.   *Id.*

At a subsequent CMU Board of Commissioners meeting held on December 29, 2016, only Commissioners Anderson, Slaughter, and Williams were present. *See* Dec. 29, 2016, Minutes [211-1] at 131.   These three Commissioners voted to

22

replace Chairman Weems with Mr. Anderson as Chairman of the Board for CMU and confirmed the removal of Warnock & Associates as CMU Engineer.   *See id.* at 131-32; *see also* Mr. Warnock's Dep. [229-1] at 205.

Given the foregoing facts, while Plaintiffs may have created a fact question as to Mr. Anderson's purported retaliatory animus against them, they have not presented any direct evidence that any of the other CMU Commissioners held such animus.   Even assuming Plaintiffs can establish the other elements of a First Amendment retaliation claim, the pertinent question is whether they have presented competent summary judgment evidence tending to show that a majority of the CMU Commissioners held a retaliatory animus against them, or that Mr. Warnock's purported speech as a citizen on a matter of public concern precipitated the adverse employment actions taken by the CMU as a whole.   *See Griggs*, 930 F.3d at 704; *Moss*, 851 F.3d at 420-21.   Plaintiffs appear to rely solely upon the temporal proximity of the "publicly revealed text from Anderson wherein he admitted to soliciting an illegal kickback from Warnock," and "Warnock's ouster from CMU" a few days later.   Pls.' Mem. [234] at 18-19.

Plaintiffs offer nothing more than conclusory assertions regarding the other CMU Commissioners' motives, and they have not cited any competent summary judgment evidence tending to show that the other two CMU Commissioners who voted in favor of terminating Plaintiffs even received Mr. Warnock's text messages. While the text messages were purportedly sent to CMU Commissioners "Lanny Slaughter" and "Cleotha Rev. Williams," among others, there is no evidence that

23

any of the Commissioners actually received the text messages, nor is there any evidence confirming that whatever telephone numbers were associated with their names in Mr. Warnock's telephone were in fact these two individuals' correct numbers.   *See* Text Messages [211-3] at 3.

During Mr. Williams's deposition, he was asked about certain text messages exchanged around December 17 and 18, 2016, and whether he had received them. *See* Dep. of Cleotha Williams [211-18] at 15-16.   Mr. Williams testified "I never got it.   It was never sent to me.   I see my name up there, but that's it.   It was never sent to me."   *Id.* at 16.   Both Mr. Slaughter and Mr. Williams testified that they had not spoken to Mr. Anderson, or with each other, regarding how they would vote prior to the vote to remove Plaintiffs.   Dep. of Cleotha Williams [211-18] at 19; Dep. of Lanny Slaughter [211-19] at 9.   In sum, based upon the record, Plaintiffs have not offered sufficient competent summary judgment evidence to create a fact question on whether any of the other CMU Commissioners were aware of Plaintiffs' protected speech when they voted.

Because Plaintiffs have not shown knowledge of Mr. Warnock's alleged protected activity by a majority of the CMU Commissioners, Plaintiffs are left with mere temporal proximity to support their claim.   This is not sufficient, even at the initial prima facie stage, to establish the required causal link between the protected activity and termination.   *See, e.g., Dearman*, 832 F.3d at 582.   CMU's Motion for Summary Judgment on the First Amendment retaliation claim should be granted.

Even if Plaintiffs had presented sufficient evidence to demonstrate that Mr.

Warnock's speech was a motivating factor in Plaintiffs' termination, CMU has

supplied evidence that it would have taken the same action regardless of Mr.

Warnock's speech.   CMU essentially relies upon these reasons in their request for

summary judgment.   *See* CMU's Mem. [229] at 9-10.   According to CMU's

December 22, 2016, Minutes, Mr. Anderson moved to terminate the services of Mr.

Warnock for eight specified reasons, including that Mr. Warnock had "acted beyond

the scope of his capacity as engineer and his assigned contractual duties," that his

action had "caused dissent and interfered with the orderly operation of CMU," and

that his actions had "interfered with the day to day operations of CMU."   Dec. 22,

2016, Minutes [211-1] at 130.

Mr. Slaughter's and Mr. Williams' deposition testimony corroborates at least

some of these stated reasons for Plaintiffs' termination.   Both testified regarding

Mr. Warnock's creation of a personnel chart to organize the employees for CMU and

that neither believed this was within Mr. Warnock's duties.   *See* Dep. of Lanny

Slaughter [229-3] at 15-16; Dep. of Cleotha Williams [211-18] at 32-33, 41.   Mr.

Slaughter also stated that Mr. Warnock was "causing dissent among individuals

within the CMU working group."   Dep. of Lanny Slaughter [229-3] at 16.

According to Mr. Slaughter, "some of the individuals were kind of disgusted with

what was going on, and it was interfering with some of the operations of their

work."   *Id*.   Mr. Williams testified that Mr. Warnock "involved himself" in the

personnel matters of CMU, and this was not a duty that would fall within the realm

of responsibility for an engineer for CMU.   Dep. of Cleotha Williams [211-18] at 30.

25

CMU has shown by a preponderance of the evidence that it would have reached the same decision regarding Plaintiffs, even in the absence of the protected conduct.  *See Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287.   The burden therefore shifts back to Plaintiffs to refute that showing by presenting evidence that CMU's ostensible explanation for the discharge is merely pretextual. *See Haverda*, 723 F.3d at 592 (quotation omitted).

While Plaintiffs conclude that they have "presented substantial evidence which refutes the truthfulness of these reasons and strongly suggests they were contrived as a cover-up for [CMU's] retaliating actions," Pls.' Mem. [234] at 19, Plaintiffs have not directed the Court to any competent summary-judgment evidence disputing that CMU could terminate Plaintiffs for the reasons given in the CMU minutes, or tending to show that CMU's explanation for the discharge was merely pretextual, *see id.*   "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

The Factual Background section of Plaintiffs' Memorandum [234] does reference Mr. Anderson's June 5, 2018, deposition testimony and points out that he could not recall why Plaintiffs were terminated in December 2016, or whether the reasons listed in the Minutes were true or false.   *See* Pls.' Mem. [234] at 13-14.   It appears that Plaintiffs may be attempting to show that the proffered reasons set forth in the December 22, 2016, Minutes, were not actually true.   Plaintiffs state that during Mr. Anderson's deposition, he "responded verbatim 'I don't recall at this

26

time' 32 times and 'I don't recall' another 38 times."   *Id.* at 14.   To the extent Plaintiffs are seeking to draw a negative inference against CMU based upon Mr. Anderson's responses, Plaintiffs do not explicitly articulate such an argument, nor do they cite any legal authority to support a position that such responses are somehow to be construed against CMU as an entity, particularly since Mr. Anderson was no longer a Commissioner by the time these responses were given. Plaintiffs' conclusory allegations are insufficient to show pretext.

In sum, CMU is entitled to summary judgment on Plaintiffs' First Amendment retaliation claim.

3.   <u>State law wrongful discharge claim</u>

Plaintiffs also advance a state law claim against CMU for wrongful discharge.   3d Am. Compl. [118] at 31-32.   Specifically, they assert that as a direct and proximate result of Mr. Warnock's refusal to participate in illegal activity, and due to his reporting of the same to authorities, Mr. Anderson caused CMU to terminate Mr. Warnock from his position as CMU Engineer and to terminate Plaintiffs' contracts with CMU.   *Id.* at 31.

a.   <u>The parties' arguments</u>

CMU asserts that dismissal of Plaintiffs' state law wrongful discharge claim is appropriate under several provisions of the Mississippi Tort Claims Act, Mississippi Code § 11-46-1, *et seq.* ("MTCA").   *See* CMU's Mem. [229] at 11-14. According to CMU, the wrongful discharge claim is time-barred by Mississippi Code § 11-46-11(3), and is further barred based upon Plaintiffs' failure to provide a

27

sufficient notice of claim under the MTCA.   *Id.*   CMU also argues that Plaintiffs'
own assertions that Mr. Anderson acted criminally and outside the scope of his
employment preclude recovery against CMU under Mississippi Code §§ 11-46-5 and
11-46-7(2), and that the MTCA's "discretionary function exemption pursuant to §
11-46-9(1)(d)" would also apply. *Id.*

Plaintiffs counter that whether Mr. Anderson was acting within the course
and scope of his employment is "simply irrelevant" because their "wrongful
discharge claim is based on a tort committed by CMU acting as an official governing
entity; it is not based on a tort committed by a mere employee."   Pls.' Mem. [234] at
20.   Plaintiffs also maintain that they provided sufficient pre-suit notice under the
MTCA by purportedly "hand deliver[ing] a pre-suit notification letter to CMU on
May 24, 2017," and filing their Second Amended Complaint within the required one-
year period.   *Id.* at 21.   Plaintiffs do not address CMU's argument about
Mississippi Code § 11-46-9(1)(d).

In its Rebuttal [235], CMU maintains that Plaintiffs failed to comply with the
MTCA's pre-suit notice requirements, *see* CMU'S Rebuttal [235] at 11-15, and that
the notice itself was woefully inadequate, improperly served, and never received by
CMU, *id.*

b.   The MTCA

The MTCA waives immunity "from claims for money damages arising out of
the torts of such governmental entities and the torts of their employees while acting
within the course and scope of their employment . . . ."   Miss. Code. Ann. § 11-46-

28

5(1).   To the extent Plaintiffs' wrongful discharge claim is based upon any conduct by Mr. Anderson that constituted malice or any criminal offense other than a traffic violation, such a claim falls outside the scope of MTCA's waiver of immunity and cannot be pursued against CMU.   *See* Miss. Code Ann. § 11-46-5; *Zumwalt v. Jones Cty. Bd. of Sup'rs*, 19 So. 3d 672, 688 (Miss. 2009).   Under such a scenario, Mr. Anderson is not considered to have been acting within the course and scope of his employment, and CMU cannot be considered to have waived its immunity.   *See* Miss. Code Ann. § 11-46-7(2) ("a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense").

To the extent Plaintiffs' wrongful discharge claim is a tort, the MTCA applies, including its pre-suit notice requirements.   *See id.*; *see also* Miss. Code Ann. § 11-6-11.[4]   According to Mississippi Code § 11-46-11(1),

> [a]fter all procedures within a governmental entity have been exhausted, any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days *before* instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity.

---

[4] Because a plaintiff is master of the complaint, the Mississippi Court of Appeals has recognized that when a plaintiff pleads that an existing contract was wrongfully terminated, the claim sounds in contract, such that it is not a tort claim within the purview of the MTCA.   *See Mississippi State Port Auth. at Gulfport v. S. Indus. Contractors LLC*, 271 So. 3d 742, 751-52 (Miss. Ct. App. 2018).   In the present case, Plaintiffs advanced both breach of contract and wrongful discharge tort claims against CMU.   To the extent Plaintiffs' wrongful discharge claim is another way of pleading their breach of contract claim, the Court has previously determined that no valid contract existed between the parties, such that the claim would fail on that basis.   Assuming it was a tort, the MTCA bars the claim for the reasons discussed here.

Miss. Code Ann. § 11-46-11(1) (emphasis added).   Service of the notice of claim for a political subdivision other than a county or municipality "shall be had only upon that entity's or political subdivision's chief executive officer."   Miss. Code Ann. § 11-46(2)(a)(ii).

The 90-day notice requirement is a "hard-edged, mandatory rule" that the Mississippi Supreme Court "strictly enforces."   *Gorton v. Rance*, 52 So. 3d 351, 358 (Miss. 2011) (quotation omitted).   This mandatory requirement cannot be cured by serving notice-of-claim letters after a complaint is filed.   Miss. Code Ann. § 11-46-11(1); *Jones v. Mississippi Insts. of Higher Learning*, 264 So. 3d 9, 27 (Miss. Ct. App. 2018), *reh'g denied* (Nov. 20, 2018), *cert. denied*, 263 So. 3d 666 (Miss. 2019) (quoting *Price v. Clark*, 21 So. 3d 509, 518 (Miss. 2009)).   When a proper pre-suit notice is not provided, the case should be dismissed without prejudice.   *Id.*

The MTCA additionally provides that the notice of claim shall:

(i)    Be in writing;

(ii)   Be delivered in person or by registered or certified United States mail; and

(iii)  Contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought, and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

Miss. Code Ann. § 11-46-11(2)(b)(i)-(iii).   Mississippi law "requires substantial compliance with the notice requirements of Section 11-46-11(2)."   *Lee v. Mem'l Hosp. at Gulfport*, 999 So. 2d 1263, 1266 (Miss. 2008).   "The purpose of pre-suit notice is to ensure that the governmental entity is informed of any claims against

it." *Jones*, 264 So. 3d at 27.

      c.    <u>Plaintiffs' Notice of Claim</u>

      Plaintiffs initiated this lawsuit on March 9, 2017, but they first advanced a wrongful discharge claim against CMU in their Second Amended Complaint [65], which was filed on December 11, 2017.   Plaintiffs have presented evidence of the existence of what they contend was a Notice of Claim [233-2] from their counsel, dated May 24, 2017.   *See* Notice [233-2] at 1.   While this notice post-dated the institution of the litigation, it is dated more than 90 days prior to the date Plaintiffs filed their Second Amended Complaint [65].   The Notice stated "RE: Tort Claims Act Notice of Claim against Cleveland Anderson" and was marked "<u>VIA HAND DELIVERY</u>."   *Id.* (emphasis in original).

      The Notice was addressed to the City Clerk for the City of Canton, Mississippi, and to Mr. Kenny Wayne Jones, General Manager of CMU.   *Id.* According to the Notice, the drafting attorney's law firm represented Mr. Warnock and Warnock Engineering

> in relation to certain causes of action against Mr. Cleveland Anderson
> ("Anderson"), Chairmen [sic] of the Board of Commissioners of Canton
> Municipal Utilities ("CMU").   While we maintain that the acts giving
> rise to said causes of action were not performed within the course and
> scope of Mr. Anderson's employment with CMU and are otherwise
> exempt from the requirements of the Mississippi Tort Claims Act, out of
> an abundance of caution please consider this Warnock's Notice of Claim
> pursuant to Mississippi Code Annotated § 11-46-11.

*Id.*   The Notice referred to, and attached, the Second Amended Complaint in this case.   *Id.*

      Even assuming Plaintiffs properly exhausted any administrative procedures

within CMU, which CMU disputes, there is no competent summary judgment evidence to demonstrate whether, or when, the Notice of Claim was received by either addressee.   Even if the Notice of Claim was in fact delivered to the individuals to whom it was addressed, Plaintiffs have not shown that it was received by CMU's "chief executive officer."   *See* Miss. Code Ann. §§ 11-46-11(1) & 11-46-11(2)(a)(ii).   For this reason alone, Plaintiffs' wrongful discharge claim should be dismissed without prejudice for failure to comply with the MTCA's pre-suit notice requirements.

Turning to the substance of the Notice of Claim, it references claims against Mr. Anderson only, and not against the CMU, and clearly states Plaintiffs' position that Mr. Anderson's acts were not performed within the course and scope of his employment with CMU.   *See* Notice [233-2] at 1.   There is no indication that any Notice of Claim was ever provided to CMU referencing Plaintiffs' claims against it as an entity.

Nor did the Notice of Claim ensure that CMU was informed of Plaintiffs' claims against it.   The Notice was in fact misleading, as the assertions contained in the Notice of Claim, if true, would seemingly preclude any recovery against CMU because Plaintiffs asserted that Mr. Anderson was acting outside the course and scope of his employment, and he is no longer a Defendant in this case.   *See id.*; *see also, e.g.,* Miss. Code Ann. § 11-46-5(1) (waiving immunity for claims arising out of the torts of governmental entities' employees while acting within the course and scope of their employment); Miss. Code Ann. § 11-46-7(2) ("an employee shall not be

considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense."); *Univ. of Miss. Med. Ctr. v. Oliver*, 235 So. 3d 75, 82 (Miss. 2017) (holding that any legal action against a governmental employee for the intentional torts in section 11-46-5(2) must proceed against the employee as an individual, as the governmental entity has not waived sovereign immunity and cannot be liable).

In sum, Plaintiffs have not shown that they complied with the MTCA's pre-suit notice-of-claim requirements.   Plaintiffs' wrongful discharge claim against CMU should be dismissed without prejudice.   *See* Miss. Code Ann. § 11-46-11.

D.   Parties' expert Motions

In light of the Court's resolution of the foregoing Motions, Plaintiffs' Motions [237], [239] to Exclude Testimony of Defendant's Experts Joseph E. Hines and John M. Wallace, Plaintiffs' Motion [243] to Exclude or Limit Opinions of Defendant's Proposed Expert Dax Alexander, P.E., and Defendant's Motion [241] to Strike Plaintiffs' Expert Designations are all moot, and they need not be addressed.

III.   CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. Plaintiffs' Motion [230] for Leave to File Amended Reply Brief is moot, Plaintiffs' Motion [221] for Reconsideration or, in the Alternative, for Leave to Amend

33

Complaint will be denied, and Defendant's Motion [228] for Summary Judgment will be granted.   Plaintiffs' claim for First Amendment retaliation will be dismissed with prejudice, and their claim under state law for wrongful discharge will be dismissed without prejudice for failure to comply with the MTCA's pre-suit notice requirements.   The remaining, later-filed Motions [237], [239], [241], [243], pertaining to experts are moot.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiffs' Motion [230] for Leave to File Amended Reply Brief is **MOOT**, and Plaintiffs' Motion [221] for Reconsideration or, in the Alternative, for Leave to Amend Complaint is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Canton Municipal Utilities' Motion [228] for Summary Judgment is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiffs' claim for retaliation in violation of the First Amendment under 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiffs' claim under state law for wrongful discharge is **DISMISSED WITHOUT PREJUDICE** for failure to comply with Mississippi Code § 11-46-11.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiffs' Motion [237] to Exclude Testimony of Defendant's Expert Joseph E. Hines, Motion [239] to Exclude Testimony of Defendant's Expert John M. Wallace, and Motion [243] to

34

Exclude or Limit Opinions of Defendant's Proposed Expert Dax Alexander, P.E, and

Defendant's Motion [241] to Strike Plaintiffs' Expert Designations are all **MOOT**.

**SO ORDERED AND ADJUDGED**, this the 2nd day of March, 2020.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE